UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05CV-239-R

**CURTIS ROBERTSON**                                                                            **PETITIONER**

**v.**

**TOM SIMPSON,** *et al.*                                                              **RESPONDENTS**

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court on remand from the Sixth Circuit Court of Appeals

regarding whether Curtis Robertson is entitled to equitable tolling to salvage his otherwise time-

barred 28 U.S.C. § 2254 petition.  Specifically, the Sixth Circuit directed this Court to determine

whether Robertson's previous counsel's "cocaine use and possible misadvice constitute

sufficient extraordinary circumstances to warrant equitable tolling."[1]  *Robertson v. Simpson*, 624

F.3d 781, 786 (6th Cir. 2010).  The Sixth Circuit cautioned that to prevail on remand Robertson

had to establish that his prior counsel's drug use "affected his ability to file a timely habeas

petition."  *Id.* at 785.

The equitable-tolling issue in this case is an extraordinarily close one.  It straddles the

fence between a case of garden variety attorney negligence in calculating the habeas deadline,

for which the Supreme Court has held that equitable tolling is not available, *Lawrence v.*

*Florida*, 549 U.S. 327, 336-37 (2007), and one of attorney misconduct, which the Supreme Court

has held can in appropriate circumstances justify it, *Holland v. Florida*, –U.S.–, 130 S. Ct. 2549,

---

[1]Robertson's prior counsel was David Scacchetti.  After Scacchetti was arrested for
cocaine possession, he closed his practice and turned Robertson's case over to his current
counsel, Matthew Robinson.

2564-65 (2010).  Having reviewed the record, the Court finds that Robertson has failed to meet his burden of establishing that his counsel's drug use was the cause of his untimely filing. Rather, based on the record, it appears that Robertson's late filing was the product of a simple miscalculation by his counsel.  Despite being provided with an opportunity to do so on remand, Robertson failed to put forth any additional proof to connect the calculation error to counsel's drug use or even to establish that the drug use was occurring when counsel made the error.  As such, Robertson has failed to demonstrate that he is entitled to equitable tolling, and his petition must be dismissed because it is time barred.

Out of an abundance of caution, given the age of this case and the difficult nature of the equitable-tolling issue, the Court alternatively has addressed Robertson's substantive claims. Finding that none merit habeas relief, the Court also will dismiss this action on the alternative ground that Robertson's petition fails to state a claim upon which relief can be granted.

## II. FACTUAL & PROCEDURAL HISTORY

The facts underlying Robertson's conviction and sentence are fully recounted in the Kentucky Supreme Court's decision on direct appeal.  This Court presumes the state court's findings of fact to be correct.  *See* 28 U.S.C. § 2254(e)(1).  The Kentucky Supreme Court recited the facts as follows:

> Appellant and his victim, Jewell Ray "J.R." Mathis, were regular patrons of Jimbo's Tavern in Paducah, Kentucky.  They met through a mutual friend, Teresa Dixon, a bartender at the tavern who also dated Mathis.  Appellant and Mathis became friends of a sort, and, because Mathis did not have his own transportation, Appellant often drove Mathis to various places.  Mathis paid Appellant for the gasoline used on the trips and also provided Appellant with methamphetamine.
>
> During these trips, Mathis told Appellant about his past.  He admitted to shooting two (2) men who got into a disagreement with the bouncer at a strip club that Mathis had once tried to open in Illinois.  Mathis told Appellant that he had killed one (1)

2

of the men and had served four (4) years in jail.  While on these trips, Appellant also
learned that Mathis always carried a gun.

A rift occurred in this friendship after Appellant dropped Mathis off at Dixon's home
one day and drove away leaving Mathis stranded because Dixon was not home.  A
few days later, on November 23, 1998, Appellant was at Jimbo's Tavern where he
had been playing pool for beer.  Testimony at trial suggested that, on that day,
Appellant drank somewhere in the neighborhood of twenty (20) beers and smoked
a marijuana cigarette.

When Mathis subsequently arrived at the tavern that day, Appellant apparently
desired to patch things up with Mathis.  Before he could do so, Mathis patted his side
with a motion that, according to Appellant and another witness, was meant to
indicate that Mathis was carrying a gun.  Later in the afternoon, Appellant and
Mathis exited the bar and went into the parking lot where they had a heated
discussion.  Appellant claims that Mathis threatened him outside.  Both men returned
to the bar.  Appellant then went back outside to his truck and retrieved his gun.  He
returned to the bar again, and began playing pool.

At some point, Appellant walked away from the pool table and toward Mathis, who
was seated near the bar.  Appellant claims that Mathis looked at him, then reached
behind his jacket, and turned his head toward Dixon.  Appellant testified at trial that
he believed that Mathis was going to shoot him.  Appellant reached for his gun and
shot Mathis five (5) times.  Appellant put his gun on the bar and ran outside.  The
police later found Appellant lying unconscious in a ditch behind the tavern and
arrested him.

*Robertson v. Commonwealth*, No. 2000-SC-0063-MR, 2002 Ky. LEXIS 176, at *1-3

(Ky. Apr. 25, 2002).

On December 10, 1998, a McCracken County grand jury indicted Robertson for Mathis's

murder.  The Commonwealth's theory of the case was that Robertson left the bar, retrieved his

gun, and returned to the tavern specifically to kill Mathis.  Robertson claimed that he shot and

killed Mathis only in self-defense.  He testified that he believed that Mathis, whom he knew to

often be armed, was reaching for a gun and that fearing for his life he shot and killed Mathis.

Although the jury was instructed on lesser–included offenses, including manslaughter and

reckless homicide, it rejected those theories and returned a verdict convicting Robertson of

intentional murder.  On December 21, 1999, the trial court sentenced Robertson to life imprisonment.

With the assistance of counsel, Robertson filed a timely direct appeal with the Kentucky Supreme Court.  It affirmed Robertson's conviction and sentence.  Its decision became final on September 26, 2002.

Robertson then filed a *pro se* Kentucky Rule of Criminal Procedure (RCr) 11.42 motion in the McCracken Circuit Court on January 22, 2003.  Robertson maintained that he was entitled to relief under RCr 11.42 based on the ineffective assistance of counsel at his trial.  The McCracken Circuit Court denied Robertson's motion.   Robertson appealed to the Kentucky Court of Appeals.  It affirmed the trial court.  Robertson's timely request for discretionary review was denied by the Kentucky Supreme Court on December 8, 2004.

Robertson filed a § 2254 habeas petition in this Court on December 12, 2005.  The Commonwealth answered the petition.  Upon review, the Magistrate Judge issued a *sua sponte* order directing the parties to show cause why the petition should not be dismissed as time barred. Finding *Lawrence v. Florida* controlling, this Court adopted the Magistrate Judge's conclusion that Robertson's petition was time barred and that under the circumstances of this case he was not entitled to equitable tolling.  This Court, however, granted Robertson a certificate of appealability on the equitable-tolling issue.

While Robertson's case was on appeal before the Sixth Circuit, the United States Supreme Court issued its opinion in *Holland v. Florida*.  In *Holland*, while recognizing that ordinary attorney negligence is not sufficient to justify equitable tolling, the Supreme Court held that "professional misconduct . . . could [] amount to egregious behavior and create an

extraordinary circumstance that warrants equitable tolling." *Holland v. Florida*, 30 S. Ct. at 2563-64.

Reading *Holland* in combination with its prior opinion in *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995), the Sixth Circuit opined that "an attorney's drug use might constitute an extraordinary circumstance that warrants equitable tolling if it causes the attorney to effectively abandon his or her client."[2]  *Robertson v. Simpson*, 624 F.3d at 785.  The Sixth Circuit then held that "for Robertson to prove that an extraordinary circumstance warrants equitable tolling, he must demonstrate that Scacchetti's drug use affected his ability to file a timely habeas petition." *Id.*

Recognizing that "equitable tolling is a fact-intensive inquiry best left to the district courts," the Sixth Circuit remanded Robertson's petition to this Court "for a determination of whether Scacchetti's cocaine use and possible misadvice constitute sufficient extraordinary circumstances to warrant equitable tolling." *Id.* at 786.  In addition to "Scacchetti's state of mind" during the relevant time period, the Sixth Circuit identified the following facts as important to deciding the equitable-tolling issue:  "[1] when Robertson first consulted with Scacchetti, [2] when Robertson became aware of Scacchetti's drug use, [3] when Scacchetti gave Robertson any misadvice, [4] when Scacchetti withdrew from representing Robertson, and [5] when Robertson retained Robinson." *Id.* at 784.  The Sixth Circuit also directed this Court to

---

[2]In *Cantrell*, the Sixth Circuit held that it could be appropriate to toll an Equal Employment Opportunity Commission filing deadline if the petitioner was "abandoned by his attorney due to his attorney's mental illness."  The Sixth Circuit found that the attorney's mental illness in that case was not a case of garden variety attorney negligence.  Because the district court had not made a factual determination concerning the attorney's mental capacity during the filing period, the Sixth Circuit remanded the case for an evidentiary hearing on whether the attorney was incapacitated at the relevant time.

consider whether Robertson exercised due diligence.  *Id.* at 786.

### III. EVIDENTIARY HEARING

With an eye toward answering the questions identified by the Sixth Circuit, on remand this Court conducted an evidentiary hearing on the equitable-tolling issue.  Robertson called only two witnesses, himself and his mother, Connie Robertson.  The Respondent did not call any witnesses.

Robertson testified that a friend recommended David Scacchetti to him.  DN 43, 4:14-19. While the appeal of his RCr 11.42 motion was still pending before the state appellate courts, he directed his mother to make contact with Scacchetti to determine whether he could assist with filing a federal habeas petition when the time came to do so.  *Id.*  Mrs. Robertson testified that she first contacted Scacchetti by telephone in March of 2004.  DN 43, 14:9-25 - 15:1-7.  After speaking with Scacchetti, Mrs. Robertson hired him to file a federal writ of habeas corpus on her son's behalf.  *Id.*  The agreed-upon fee was ten thousand dollars up front and was paid via a personal check from Mrs. Robertson and her husband dated March 30, 2004.  DN 43, 16:3-24.

Mrs. Robertson's notes indicate that at some point in time, Scacchetti advised her that the deadline to file a habeas petition was December 7 or 8, 2005.  DN 43, 18:2-3.  Although it is not entirely clear how Scacchetti calculated this date, Mrs. Robertson testified that she recalled him saying the petition was due a year from the date of the final state court decision, December 8, 2004.  DN 43, 20:9-25 - 21:1-17.  In a letter to her son dated March 7, 2005, Mrs. Robertson advised him of the due date and stated that Scacchetti would file the petition "long before" it expired.  *Id.*

Mrs. Robertson repeatedly called Scacchetti through the summer of 2005 to check on

6

the status on her son's case, possibly over seventy-five times.  DN 43, 19:1-15.  Scacchetti did

not return every phone call, but Mrs. Robertson did speak to him several times.  *Id.*  Each time

he assured her that the petition would be filed by the December deadline.  *Id.*  Scacchetti seemed

normal to Mrs. Robertson and nothing about their conversations caused her to suspect that he

had a drug problem.  DN 43, 29:7-24.

By September of 2005, Robertson was feeling anxious about his case and wrote

Scacchetti a letter inquiring about the status of his habeas petition.  DN 43, 6:18-21.  This was

the only letter Robertson ever wrote Scacchetti.  *Id.*  Robertson testified that while Scacchetti did

not write him back, Scacchetti did speak with Mrs. Robertson and again advised her that the

deadline for filing the petition was December 2005.[3]  *Id.*  He assured her that it would be filed in

time.  *Id.*

Sometime in October 2005, Scacchetti called Mrs. Robertson to advise her that he had

been arrested and jailed for cocaine possession.  DN 43, 20:24-25 - 22:1-10.  He stated that he

was closing down his law practice to enter a treatment facility, but that he would transfer

Robertson's file to another lawyer that would file the petition by the December deadline.  *Id.*

Mrs. Robertson communicated this information to her son.  DN 43, 7:20-25.

Sometime between October and December 7, 2005, Scacchetti asked Robertson's current

counsel, Matt Robinson, to take over Robertson's case for him.  Robertson did not offer any

proof regarding the details or timing of this arrangement.  The testimony was limited to the fact

that Scacchetti made the arrangement, not the Robertsons.  DN 43, 23:18-20.  Likewise,

---

[3]Robertson only actually spoke with Scacchetti one time in June of 2004 shortly after his
mother hired him.  DN 43, 4:22-25.  Robertson did not testify about content of that conversation.

Robertson did not present any evidence regarding Robinson's belief as to the petition's due date at the time he took the case over for Scacchetti.  Robertson testified only that Robinson contacted him by telephone in late November or very early December and told him that he would be representing him in place of Scacchetti.[4]  DN 43, 9:1-7.  It is unclear what work if any Scacchetti had done on the case before he turned it over to Robinson.[5]

## IV. EQUITABLE TOLLING

The Antiterrorism and Effective Death Penalty Act (AEDPA) states that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).[6]  "The AEDPA statute of

---

[4]Robinson did not testify at the hearing or submit a sworn affidavit to the Court.  In his post-hearing brief, however, he stated:  "Attorney Scacchetti arranged for new counsel (the undersigned) to represent Robertson and to file Robertson's § 2254 motion on December 6, 2005."  DN 46 at 4.

[5]Scacchetti also did not testify at the hearing.  Robinson indicated that his efforts to serve Scacchetti with a subpoena were unsuccessful.

[6]The AEDPA's one-year statute of limitations begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

8

limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006) (internal quotation marks omitted).  The parties agree, and the Sixth Circuit found, that under 28 U.S.C. § 2244(d)(1) Robertson had until November 8, 2005, to file his habeas petition in federal court.[7]  It is likewise undisputed that Robertson did not file his petition until December 12, 2005.  Thus, on its face, the petition is time barred.

However, because the AEDPA's statute of limitations is not jurisdictional, a federal court can use its equitable powers to review a petition that is technically untimely.  *Holland v. Florida*, 130 S. Ct. at 2562 ("[W]e therefore join the Courts of Appeals in holding that § 2244(d) is subject to equitable tolling.").  "[A] litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some

---

[7]The Sixth Circuit calculated the date as follows:

A jury convicted Robertson of murder on September 3, 1999.  Robertson pursued a direct appeal to the Kentucky Supreme Court, which affirmed his conviction, then issued an order denying a petition for rehearing on September 26, 2002.  Robertson had an additional ninety days within which to file a petition for writ of certiorari with the United States Supreme Court, which he did not do.  Thus, the statute of limitations for filing a federal habeas corpus action began to run on December 25, 2002.  Approximately one month after the limitation period began to run, Robertson filed a motion for a court order vacating his judgment of conviction and sentence pursuant to Kentucky Rule of Criminal Procedure 11.42, which tolled the running of the statute of limitations. The circuit court denied his motion and the Kentucky Court of Appeals affirmed.  The denial of Robertson's Rule 11.42 motion became final when the Supreme Court of Kentucky denied discretionary review on December 8, 2004. Then, the statute of limitations began to run again, with approximately one month elapsed and eleven months remaining.  The limitation period expired on November 8, 2005.

*Robertson v. Simpson*, 624 F.3d at 782 (internal citations omitted).

9

extraordinary circumstance stood in his way."[8] *Id.* at 2562-63 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The equitable-tolling analysis is fact intensive, and "courts must consider equitable tolling on a 'case-by-case basis.'" *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005) (internal citations omitted).

## A.    Extraordinary Circumstance

In *Holland v. Florida*, the Supreme Court reaffirmed that a "garden variety claim of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling." *Holland v. Florida*, 130 S. Ct. at 2564 (citing *Lawrence v. Florida*, 549 U.S. at 336-37). The Supreme Court went on to hold that an attorney's affirmative misconduct could supply a basis for equitable tolling if the behavior is egregious and prejudices the petitioner.[9] *Id.* at 2562, 2564.

It goes without saying that cocaine use by an attorney is egregious. It is both illegal and unprofessional. However, Robertson did not meet his burden of establishing that Scacchetti's cocaine use was the cause of his late filing. On remand, Robertson failed to put any additional proof before the Court regarding the extent, timing, or effect of Scacchetti's drug use. The

---

[8]Prior to *Holland*, the Sixth Circuit considered five factors when determining whether to toll the statute of limitations. *See Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001). "However, *Holland* clarified that requests for tolling under AEDPA are reviewed under a two-part test." *Robinson v. Easterling*, No. 09-5447, 2011 U.S. App. LEXIS 10416, at *7, n.1 (6th Cir. May 20, 2011).

[9]In *Holland*, the attorney at issue effectively abandoned Holland by failing to (1) file Holland's federal petition on time despite many letters that repeatedly emphasized the importance of his doing so; (2) conduct the research necessary to find out the proper filing date, despite letters that went so far as to identify the applicable legal rules; (3) inform his client in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, despite many pleas for that information; and (4) communicate with his client over a period of years, despite various pleas from his client that he respond to his letters. *Id.* at 2564.

Supreme Court of Ohio's disciplinary report remains the sole evidence regarding Scacchetti's

drug use.  *See Disciplinary Counsel v. Scacchetti*, 867 N.E.2d 830 (Ohio 2007).  As the Sixth

Circuit pointed out, that report is not especially insightful with respect to Scacchetti's state of

mind at the time he misadvised Robertson.  *Robertson v. Simpson*, 624 F.3d at 785.  The report

does not indicate when Scacchetti began abusing cocaine or the extent to which his cocaine use

impacted his practice.  It indicates only that Scacchetti was arrested in October 2005 and that he

resorted to cocaine use as a means to self-medicate against pain and depression that he had

developed two years prior as a result of a staph infection and neck injury.  Certainly, it is not

clear from the report that Scacchetti was under the influence of cocaine when he incorrectly

advised Robertson and his mother that the petition was due on December 7 or 8, 2005, instead of

November 8, 2005.

     Although the record does not conclusively establish the reason for Scacchetti's error, one

can surmise that Scacchetti failed to include in his calculations the month that the statute of

limitations ran between the time that the Kentucky Supreme Court denied Robertson's direct

appeal and the time that Robertson filed his RCr 11.42 motion in state court.[10]  Instead of

including this time, it appears that Scacchetti calculated the year from the date that the Kentucky

Supreme Court denied discretionary review of Robertson's RCr 11.42 collateral attack.

     Unfortunately, this type of calculation error is not uncommon in habeas cases.  This same

error has been made by many lawyers who were not alleged to have been under the influence of

---

[10]"Although 28 U.S.C. § 2244(d)(2) provides that the one-year statute of limitations is
tolled while a duly filed petition for state collateral review is pending, the tolling provision does
not revive the limitations period or restart the clock; rather, it can only serve to pause a clock that
has not yet fully run."  *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001).

drugs or alcohol.  *See, e.g.*, *Matthews v. Dailey*, No. 3:06CV-P270-R, 2007 U.S. Dist. LEXIS

66108 (W.D. Ky. Sept. 5, 2007) (noting that in the habeas action before the court counsel

acknowledged that he was "frankly confused" regarding how to calculate the statute of

limitations).

      Furthermore, while Scacchetti did not communicate with the Robertsons as much as they

would have liked during the course of his representation, his actions do not rise to the level of

client abandonment.  While Scacchetti may not have returned every one of Mrs. Robertson's

seventy-five plus phone calls, he did return several.  During those calls, irrespective of any drug

use, he continued to assure her that he would file the petition.  Even after his arrest in October

2005, he contacted Mrs. Robertson, advised her of his situation, and told her that he would turn

the case over to another lawyer.  Scacchetti followed through on his word by engaging current

counsel, Robinson.

      While the record is unclear, the Court's best guess is that Robinson relied on the deadline

as calculated by Scacchetti.  The certificate of service on the petition indicates that Robinson

served it on December 7, 2005, the same date that Robertson indicates he was advised by his

prior counsel was the filing deadline.  He filed it with the Court five days later on December 12,

2005.  It seems unlikely that Robinson would have waited an additional five days to file the

petition with the Court if he had realized that the petition already was untimely.  The most

logical explanation is that Robinson, like Scacchetti, believed the filing deadline to be either

December 7 or 8, 2005.  It also seems that Robinson incorrectly believed that serving the petition

was tantamount to filing it with Court as he stated in his reply to the Magistrate Judge's Show

Cause Order: "The undersigned  . . . filed Petitioner's § 2254 petition as quickly as possible on

December 7, 2005."[11]  DN 24 at 2.

Although the Court provided Robertson with an opportunity to more fully develop the record, in this Court's opinion, he has failed to demonstrate "that Scacchetti's drug use affected his ability to file a timely habeas petition."  *Robertson v. Simpson*, 624 F.3d at 785.  At most, the record demonstrates that Robertson's late filing was caused by a calculation error on Scacchetti's part.  True, Scacchetti could have been high on cocaine when he made the error, but there is no proof of that fact.  And, it is equally plausible that Scacchetti was perfectly sober when he made the error, one that is not uncommon in the habeas context.

This Court is unwilling to assume that Scacchetti was high on cocaine on the day he calculated the deadline simply because he was arrested for cocaine possession some seven months later, especially where Robertson bears the burden of proof.  Robertson has failed to demonstrate that his late filing was caused by anything more than "garden variety excusable neglect" in miscalculating the deadline.  As such, he has not demonstrated an exceptional circumstance that would justify an application of equitable tolling.  *Holland v. Florida*, 130 S. Ct. at 2564.

---

[11]In the case of a *pro se* prisoner, a habeas corpus petition is deemed filed when the petition is handed over to prison authorities for mailing.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th 2002).  This is known as the "prison mailbox rule."  *Id.*  In this Circuit, however, the rule only applies if the petition is mailed by the prisoner from his place of incarceration.  *Id.*  It does not apply if the prisoner mails it to a third party.  *Id.*  ("The common law mailbox rule is inapplicable to the mailing of habeas petitions to third parties, as intermediaries, who then mail them to the court for filing.").  Likewise, the rule is not available to prisoners, like Robertson, who are represented by counsel.  *Rutledge v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000).  When a prisoner is represented by counsel, the controlling date is the date the court receives the filing, not the date counsel places the filing in the mail.  *See Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986) ("Filings reaching the clerk's office after a deadline are untimely, even if mailed before the deadline.").

13

**B.     Due Diligence**

A petitioner relying on equitable tolling to save an otherwise time-barred habeas petition must demonstrate that he acted promptly in asserting his federal rights. *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004); *Cook v. Stegall*, 295 F.3d 517, 522 (6th Cir. 2002). The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence. *Holland v. Florida*, 130 S. Ct. at 2565. The Court's determination that Robertson did not establish an exceptional circumstance effectively moots the necessity of evaluating his diligence. Nevertheless, because the Sixth Circuit instructed this Court to consider the diligence factor on remand, it will do so.

On balance, the Court finds that under the circumstances Robertson acted diligently. His reliance on Scacchetti's assurance that he would find another lawyer was not unreasonable. Having been contacted by that new counsel in late November or early December, it was reasonable for Robertson to assume that the new counsel would file a petition on his behalf. The petition was filed before anyone discovered Scacchetti's calculation mistake. Based on Robertson's belief that his petition was due in December and Scacchetti's assurances that he would secure alternative counsel, Robertson acted in a reasonably diligent manner.

Nevertheless, Robertson's petition was untimely due to Scacchetti's error, an error that Robertson failed to demonstrate amounts to an exceptional circumstance. As such, the Court will dismiss Robertson's petition as time barred. However, given the age of this case and the fact that the equitable-tolling issue is a fairly close one, the Court will address the merits of Robertson's substantive claims, in the alternative.

14

# V. SUBSTANTIVE CLAIMS

### A.   Exhaustion

A federal habeas petitioner seeking relief from state imprisonment must first exhaust state court remedies.  28 U.S.C. § 2254(b)(1).  To comply with the exhaustion doctrine, the petitioner must fairly present the "substance" of his federal habeas claims to the state courts so that the state judiciary has the first opportunity to hear them.  *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999).  The petitioner must present both the factual and the legal bases of the claim. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  In other words, a petitioner must present "the same claim under the same theory" to the state court.  *Id.* at 552-53 (internal citations omitted).  It is not sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a "somewhat similar" state-law claim.  *Anderson v. Harless*, 459 U.S. 4, 6, (1982) (per curiam) (internal citations omitted).  In other words, presenting a claim only as an error of state law does not exhaust a federal law claim, even if the federal law claim is based on the same facts.  *Id.*

Upon review of Robertson's substantive claims, the Court discovered that some (his jury instruction and exclusion of evidence claims) only had been presented to the state courts as errors of state law.  This does not satisfy the exhaustion requirement.  Normally, this Court would not review the unexhausted claims.  However, Respondent has never raised the exhaustion issue.  In fact, Respondent admitted in its answer that:  "all of the issues raised by petitioner are exhausted."  DN 20, 1.  Respondent's admission constitutes an express waiver of the exhaustion requirement.  *See D'Ambrosio v. Bagley*, 527 F.3d 489, 497 (6th Cir. 2008).  Accordingly, this Court will review the substance of all of Robertson's claims irrespective of the

15

fact he did not properly exhaust a portion of them.

**B.      Standard of Review**

Review in this case is governed by the AEDPA.  It states that:

(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

The United States Supreme Court has interpreted the provisions regarding a state court decision that is "contrary to" or an "unreasonable application of" clearly established federal law.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  In *Williams*, the Court determined that under the "contrary to" clause, a federal habeas court may grant a writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Id.* at 405.  A state court's ruling violates the "unreasonable application" clause "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.

16

Even where the state court decision does not specifically cite to relevant federal case law, the deferential AEDPA review standard applies. *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that the state court is not required to cite United States Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). However, the deferential standard of the AEDPA does not apply where the state court has not adjudicated the merits of the particular claim. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

To the extent that a habeas petitioner challenges the factual findings of the state court, § 2254(e)(1) provides that "determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

## C.    Jury Instructions

Robertson alleges that instructing the jury on voluntary homicide violated his constitutional right to a fair trial because the evidence at trial indicated that he was intoxicated at the time of the shooting, and therefore, lacked the intent necessary to commit voluntary homicide. The Kentucky Supreme Court rejected this claim as follows:

> Voluntary intoxication is a defense to a criminal charge only if it "negatives the existence of an element of the offense." Intent on the part of the actor is an element of both intentional murder  and first-degree manslaughter. Thus, voluntary intoxication can be a defense to intentional murder or to first-degree manslaughter if it negatives the element of intent, *i.e.*, if the actor's intoxication prevents him or her from having "death or serious physical injury as a conscious objective." In other words, the intoxication must be "so complete and of such an advanced degree as to totally deprive the defendant of his reason and to render him incapable of knowing right from wrong [and] of that degree and extent as renders the defendant practically an automaton with the loss of his rudder of reason, thereby depriving him of the

17

ability to entertain a criminal intent." Whether a defendant's intoxication rose to this level is a question of fact for the jury. Indeed, "it is the established rule that when there is any evidence tending to show that an accused was so drunk at the time of the commission of the act that he did not know what he was doing or was incapable of entertaining felonious intent, the court should instruct the jury on that theory of defense." It is then up to the jury to decide whether it finds the evidence convincing.

In this case, the jury was instructed to consider whether Appellant's intoxication negated his intent to commit murder or first-degree manslaughter. The instructions provided: "Even though the Defendant might otherwise be guilty of Murder. . . or First-Degree Manslaughter. . . you shall not find him guilty under those Instructions if at that time he committed the offenses if he did so, he was so intoxicated that he did not form the intention to commit the offenses."

Appellant claims that this instruction was inadequate because the evidence introduced by the Commonwealth left no question for the jury to resolve. Appellant asserts that the trial court should have instructed the jury that it could find Appellant guilty only of second-degree manslaughter or reckless homicide. However, "a trial judge in a criminal case cannot weigh the evidence or judge the credibility of witnesses and take from the jury a controverted question of material fact, no matter how strongly he may be of the opinion that the evidence established the fact beyond a reasonable doubt." And in this case, the question of Appellant's level of intoxication is controverted.

*Robertson v. Commonwealth*, 2002 Ky. LEXIS 176, at *4-15.

The instructions given to Robertson's jury substantially conform to Kentucky's homicide statutes, KY. REV. STAT. §§ 507.010-.050, and its statute on intoxication as a defense to criminal liability, KY. REV. STAT. § 501.080. A petitioner, like Robertson, who seeks to show a constitutional error from a jury instruction that mirrors a state statute, "must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009).

The instructions at issue placed the burden of proving intent squarely on the prosecution's shoulders. They correctly denoted that intoxication is a defense to intentional

18

homicide only if it prevented the accused from possessing the requisite intent.  None of the statutes in question state that a blood-alcohol level over some minimum threshold establishes intoxication as a defense to murder.  Rather the statutes, as do the jury instructions at issue, allow intoxication to serve as a defense only if it negates an element of the offense (in this case intent).  Under Kentucky law, it was for the jury to determine whether Robertson acted with the intent to commit murder.  The trial judge correctly instructed the jury in this regard.  The jury instructions at issue did not violate Robertson's constitutional rights because they correctly and fairly stated the law as related to intoxication.

## D.     Exclusion of Evidence

Robertson alleges that his constitutional rights were violated when the trial court (1) did not permit two police officers to testify to exculpatory statements he made after his arrest; and (2) refused to allow the introduction of victim Mathis's prior criminal record.

Criminal defendants enjoy a Sixth and Fourteenth Amendment right to present evidence, but that right "is subject to reasonable restrictions," including reasonable restrictions on the admission of evidence at a trial.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "The right to present a complete defense . . . thus does not mean that a defendant may introduce whatever evidence he wishes, only that any state-law evidentiary restrictions cannot be 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) (quoting *United States v. Scheffer*, 523 U.S. at 308)).  "[F]ederal courts will not step in to override a State's application of its own evidentiary rules unless the State 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Varner v. Stovall*, 500 F.3d 491, 499 (6th Cir. 2007) (quoting *Montana v.*

*Egelhoff*, 518 U.S. 37, 43 (1996)).

### 1.    Robertson's exculpatory statement

Robertson argues that the trial court violated his constitutional rights when it prevented

him from soliciting testimony from his arresting officers concerning exculpatory statements he

made after his arrest.  Robertson allegedly said to the two arresting officers:  "I was threatened";

"what do you do if some guy threatens to blow your head off"; and "he didn't give me no

choice."

In rejecting Robertson's claim that exclusion of this evidence was improper as a matter of

state law the Kentucky Supreme Court held:

> Under KRE 804(b)(3), an out-of-court statement may be introduced when the
> statement is against the declarant's interest.  This rule works on the principle that a
> reasonable person would not make such a statement against his own interest unless
> he believed it to be true.  To determine whether the statement is against the
> declarant's interest, "a trial court must look at the language of the statement in
> question, the context in which it was uttered, and the purpose for which it is being
> offered into evidence."  Already we have indicated that Appellant's statements were
> in the nature of asserting self-protection and that they were made after he was
> arrested.   Appellant's purpose in offering the statements was clearly to say to the
> jury, "I said it before.  It must be true."
>
> The trial judge concluded that Appellant's statements to the police were not against
> his interest, but were in fact self-serving or exculpatory.  As we have noted before,
> "exculpatory statements are not admissible in evidence unless corroborating
> circumstances clearly indicate the trustworthiness of the statement."   The
> circumstances surrounding Appellant's discovery in the ditch behind the bar clearly
> inculpated him.  He needed to mitigate these circumstances, and we have little doubt
> that he would have made similar statements in an effort to exculpate himself
> regardless of whether they were true.  These are the circumstances under which the
> trial judge excluded the self-serving testimony.  We find no abuse of discretion in the
> court's decision and affirm its ruling.
>
> Appellant contends alternatively that his statements to the police officers should have
> been admitted as excited utterances.  KRE 803(2), an out of court statement may be
> used in court if it was a "statement relating to a startling event or condition made
> while the declarant was under the stress of excitement caused by the event or

20

condition."   The admissibility of these statements depends heavily upon the particular facts of the case and trial court rulings are entitled to deference on appeal. "Only on rare occasions, however, has a self-serving statement been found admissible as an excited utterance."  The trial court found that the self-serving nature of Appellant's statements removed them from the scope of the excited utterance exception, and this Court finds no error or abuse of discretion with respect to this decision.

*Robertson v. Commonwealth*, 2002 Ky. LEXIS 176, at *14-18.

The Confrontation Clause is not violated by limiting the questioning of witnesses on the grounds that the evidence is hearsay or irrelevant.  *See, e.g., Takacs v. Engle,* 768 F.2d 122, 125 (6th Cir. 1985).  This Court agrees with the state court's conclusion that the statements at issue constituted inadmissible hearsay evidence as defined by the Kentucky Rules of Evidence.  They were made out of court by someone other than the witness and were being offered to prove the truth of the matter asserted (Robertson acted in self defense).  The testimony was excluded because it constituted hearsay and did meet an exception to the hearsay rules.  Its exclusion did not violate Robertson's federal constitutional rights.

Moreover, even if excluding this testimony was somehow erroneous (which this Court does not believe), it does not automatically follow that habeas relief must be granted.  For purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Sanborn v. Parker*, 629 F.3d 554, 572 (6th Cir. 2010) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  As noted by the Kentucky Supreme Court while Robertson was not allowed to cross-examine the police officers regarding his statements, he was allowed to testify on redirect to their content to rebut the prosecution's insinuation that he had recently fabricated his self-defense theory.  *Robertson v. Commonwealth*, 2002 Ky. LEXIS

21

176, at *15.  As such, the fact that Robertson made the statements shortly after his arrest did

come into evidence; he was just not able to get the statements into the record by the method he

desired.  The Court is confident that if there was any alleged error in this regard, it was harmless.

     **2.**    **Mathis's criminal record.**

     Robertson argues that the trial court violated his constitutional rights when it prevented

him from introducing Mathis's prior criminal record.

     In rejecting Robertson's claim that exclusion of this evidence was improper as a matter of

state law the Kentucky Supreme Court held:

> When Appellant shot Mathis, he knew only those things Mathis had told him--that
> he had burned down buildings in Illinois and served time in prison for killing a man
> in a shootout -- and those things he saw -- Mathis always carried a gun.  He had
> neither heard the Illinois officer's story about arresting Mathis nor seen Mathis's
> criminal record.  Thus, these were not relevant to Appellant's fear of Mathis which
> could be based only on what he knew.  It did not even matter if the things that Mathis
> told Appellant were true, only that they caused a justified fear by Appellant of
> Mathis.  With the officers testimony and Mathis's criminal record, Appellant would
> have overstepped the bounds of allowable evidence to prove that his fear was
> justifiable.  Bringing in the officer's testimony and Mathis' record would have only
> artificially emphasized a collateral issue.  Appellant  was allowed to testify about the
> information that Mathis had given him, which was the only information upon which
> he could have reasonably based his fear of the victim.  Thus we find no error in the
> court's ruling and affirm.

*Robertson v. Commonwealth,* 2002 Ky. LEXIS 176, at *19-22.

     The Court agrees with the state court that admission of  Mathis's criminal record would

have run afoul of the Kentucky's evidentiary rules because Robertson did not have personal

knowledge of the criminal record.  Robertson was allowed to testify regarding what he believed

to be true about Mathis's violent past.  Robertson, having failed to introduce any evidence that

he had seen Mathis's criminal record, was not entitled to introduce it in support of his self-

defense theory.  The exclusion of Mathis's criminal record did not violate Robertson's

constitutional rights because the report itself was not probative evidence that supported

Robertson's self-defense theory.  *See, e.g.*, *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir.

1997) ("It is the materiality of the excluded evidence to the presentation of the defense that

determines whether a petitioner has been deprived of a fundamentally fair trial.").

**E.    Prosecutorial Misconduct**

Robertson argues that there were several instances of prosecutorial misconduct during his

trial:  (1) referring to the shooting as an execution and an ambush; (2) characterizing the defense

as a lie and the defendant as a liar; (3) referring to the shooting as a killing in a public place

when a school shooting had recently taken place in the community; and (4) telling the jury that it

could not find self-defense because the physical evidence did not show it.

The Kentucky Supreme Court determined that the prosecutor's conduct and statements

were based on the evidence and that Robertson's "trial was not rendered fundamentally unfair by

the Commonwealth Attorney's conduct."  *Robertson v. Commonwealth,* 2002 Ky. LEXIS 176, at

*27-28.  It explained its holding as follows:

> As this case indicates, the Commonwealth Attorney is entitled to draw reasonable
> inferences from the evidence, to make reasonable comment upon the evidence and
> to make a reasonable argument in response to matters brought up by the defendant.
> A prosecutor may also express his opinion as to the falsity of a defense presented by
> the defendant. . . . Further, we allow the attorney reasonable latitude in argument to
> persuade the jurors that the matter should not be dealt with lightly.  In this case, the
> Commonwealth Attorney was well within these boundaries.
>
> As pointed out by Appellant, the Commonwealth Attorney did refer to the shooting
> as an execution on several occasions.  This, however, was not misconduct.  It was a
> description used to explain to the jurors the magnitude of what happened.  It was
> based on the evidence presented at trial, which showed that Appellant shot Mathis
> five times at close range, once in the skull, severing the brain stem and upper spinal
> cord.
>
> Appellant also contends that it was misconduct for the Commonwealth Attorney to

tell the jury that the defense was a lie and the defendant was lying.  Again, these
statements are reasonable conclusions drawn from the evidence.  The calculated
nature with which Appellant left the bar to get his gun, returned to play pool, and
then aimed his gun and pulled the trigger five times certainly provides the basis for
a finding of intentional conduct, which is, of course, contrary to Appellant's claim
of self-protection. The Commonwealth's case rested on an assumption that Appellant
was lying.  It was not misconduct for the attorney to point this out to the jury. For the
same reasons, it was not misconduct for the attorney to tell the jury that it could not
find self-defense. The attorney was merely summarizing what he believed the
evidence to show.

As for the reference to a killing in a public place, which Appellant claims was used
to allude to the Heath High School shooting, we find that this statement did not
render the entire trial fundamentally unfair. This statement was based on the
evidence. Appellant did shoot Mathis in a public place, and the Commonwealth
Attorney made a fair comment on this evidence. Although a school shooting had
occurred in the community, the Commonwealth Attorney made no reference to it.

*Id.* at *23-28.

The appropriate standard of review for a prosecutorial misconduct claim in a federal
habeas corpus action is "the narrow one of due process, and not the broad exercise of
supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.
DeChristoforo*, 416 U.S. 637, 643 (1974)).  "To be cognizable" on habeas review, prosecutorial
misconduct "must have 'so infected the trial with unfairness as to make the resulting conviction
a denial of due process.'"  *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting
*Donnelly v. DeChristoforo*, 416 U.S. at 637).  In this respect, "'the touchstone of the due process
analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra v. Mich.
Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219
(1982)).

It is permissible for the prosecution to comment on defense strategy during closing.
*Slagle v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006).  "Case law permits comments that are made

24

in response 'to the argument and strategy of defense counsel.'" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *Butler v. Rose*, 686 F.2d 1163, 1172 (6th Cir. 1982)).  Moreover, a prosecutor is not required to use the most benign terminology or avoid reasonable descriptions of the events in question.  One of the purposes of the closing argument is to persuade the jury not to buy into the opposing party's theory of his case.

This Court agrees with the Kentucky Supreme Court's determination that the comments in question did not deprive Robertson of a fundamentally fair trial in violation of the United States Constitution.  The Kentucky Supreme Court's decision to reject Robertson's prosecutorial misconduct claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as reflected in the decisions of the United States Supreme Court.

## F.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the assistance of an attorney whose performance ensures a fair trial and a reliable result.  *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).  To prevail on an ineffective-assistance claim, a convicted defendant must prove that 1) counsel's performance was deficient, and 2) the deficiency was prejudicial to the defense.  *Id.* at 687.  Because a convicted defendant must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement.  *Id.* at 697.

To satisfy the deficiency prong of the test, the defendant must prove that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action

25

'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michael v. Louisiana*, 350 U.S. 91, 101 (1955)).  The reviewing court's assessment must consider the circumstances of the particular case at the time of the challenged conduct.  *Id.* at 690.

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence.  *Id.* at 694-95.  A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Cullen v. Pinholster*, –U.S.–, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. at 694), which requires a "substantial, not just conceivable, likelihood of a different result," *id.*  In addition to the "highly deferential" view that the Court takes of counsel's performance under *Strickland*, the Court is also limited in its examination of such claims by the "'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 131 S. Ct. at 1404 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, n.2 (2009)).  In this way, in a habeas action the review of a state court's determination of ineffective-assistance claims is "doubly" deferential.  *Id.*

Robertson asserts numerous errors his trial counsel allegedly committed.  Applying *Strickland*, the Kentucky Court of Appeals rejected each of Robertson's ineffective-assistance-of-counsel claims.  *See Robertson v. Commonwealth*, No. 2003-CA-604-MR, (Ky. Ct. App. Feb. 13, 2004).  After reviewing the record before it, the Kentucky Court of Appeals held that Robertson had failed to demonstrate that any of the alleged errors actually prejudiced him:

> The eyewitness testimony against Robertson was devastating.  The bar patrons were acquainted with both men.  They indicated without exception that Robertson appeared agitated with Mathis and that he had badgered him up until the time that he shot and killed him. They insisted that Mathis had not threatened Robertson in any way and that he had attempted to avoid Robertson, expressly telling him that he did not want trouble. The consistent thread of that testimony severely undermined

26

Robertson's reliance on a theory of self-defense.  Having reviewed the record, we are
persuaded that Robertson's conviction resulted from this critical source of evidence.
It is not reasonably likely that it could have been avoided or that it could have been
attributed to any shortcomings of his counsel or any other error identified by
Robertson. If counsel erred with respect to any or all of the matters enumerated by
Robertson, the alleged errors cannot be shown to have been as prejudicial as the
consistent body of testimony against him.

*Id.* at 5.

This Court need not individually assess each of Robertson's ineffective-of-counsel-

claims because they all suffer from the same defect.  Robertson failed to show that any of the

alleged errors actually prejudiced him.  He supported his RCr 11.42 motion with only the barest

speculation and conjecture that the outcome of his trial might have been different had his counsel

not committed the various alleged errors.  For example, while he asserted that counsel should

have moved for a change of venue, he did not provide any evidence to show that the jury in his

case was biased against him or that a jury from a different location would have ruled differently.

While he alleged that his counsel should have moved to recuse the trial judge because he was

personally biased against Robertson, he failed to cite any evidentiary rulings or actions by the

trial judge in front of the jury that were motivated by his personal dislike for Robertson.

Likewise, he did not explain how unidentified expert testimony would have assisted him in

prevailing on his defenses.  To the extent that Robertson has included additional ineffective-

assistance-of-counsel claims in this habeas action, he has likewise failed to demonstrate how the

alleged errors of his trial counsel actually prejudiced him.

In short, Robertson offered the state court, as well as this Court, nothing more than sheer

speculation on the prejudice element.  He merely suggested that the alleged errors could have

influenced the jury.  Such a meager showing is not sufficient to establish ineffective assistance of

counsel.  *Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007).

This Court is satisfied both that none of the alleged errors actually prejudiced Robertson and that the Kentucky Court of Appeals's resolution of Robertson's ineffective-assistance-of-counsel claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as reflected in the decisions of the United States Supreme Court.

## VI. CERTIFICATE OF APPEALABILITY

There is no automatic right to appeal a district court's denial of an application for a writ of habeas corpus; the petitioner must seek and obtain a certificate of appealability (COA) from the district court.  28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability is available only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing exists where "jurists of reason could disagree with the district court's resolution of his constitutional claims or . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 532 U.S. at 327.

The standard used to govern the COA analysis depends upon whether the lower court dismisses the petition after a substantive review of the merits, or merely on procedural grounds. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).   In the case of the former, "the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.  When a district court denies such a motion on procedural grounds without addressing the merits of the motion, a certificate of appealability should issue if the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of

the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The procedural issue in this case, the applicability of equitable tolling, is a close one. It is certainly possible that reasonable jurists could disagree with the Court's highly fact-intensive conclusion in this regard. Recognizing the closeness of this issue, the Court alternatively addressed the petition's merits. The substantive issues are straight forward and uncomplicated. Upon review, the Court concludes that reasonable jurists would not find its assessment of the constitutional claims debatable or wrong. As such, Robertson cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, he is not entitled to a COA.

The Court will enter an Order that is consistent with this Memorandum Opinion.

Date:

cc:      Counsel of Record

4413.008